# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed June 29, 1909.

MARY A. CONNOLLY
VS.
MOLLIE A. McRAE.

In re Exceptions to the Claim of J. J. Mahon.

*Dennis & Dennis* for plaintiff.

*Isaac Lobe Straus* for defendant.

*Alexander Yearley, 3rd, Lewis M. Lang, R. Howard Bland* and *T. Howard Embert* for exceptants.

SHARP, J.—

A partnership was formed in January, 1903, between Mary A. Connolly and Mollie A. McRae to conduct a millinery business. The agreement of partnership contained the following stipulation:

"4. The party of the first part (Mary A. Connolly) agrees to give her entire time, business experience and knowledge to the business of said partnership, and the party of the second part agrees to procure a loan of the sum of five thousand dollars, to be used as the capital of said partnership, by causing and procuring. the promissory note of said partnership for the sum of five thousand dollars to be discounted, and the same to be renewed from time to time during the continuation of said co-partnership as its business needs may require. The said partnership note and its renewals to be a partnership indebtedness and liability, and to be retired and paid off out of the profits of the partnership business as rapidly as it may be able to do so, without impairing its capital and business resources. That no dividend of partnership profits shall be made between the partners (except the weekly salaries hereinbefore mentioned), until the said promissory note, above mentioned, and all renewals thereof shall have been fully paid and satisfied, and then only by the assent of both partners, and when such profits shall not be deemed necessary to the advancement of the partnership's business. The endorsers of the promissory note hereinafter recited shall assent hereto and agree to grant their endorsements on all renewals of the said partnership note as the said partnership's business may require."

The agreement was duly executed by the parties, and below their signatures appears the following:

"In consideration of Mary A. Connolly entering into the above co-partnership with Mollie A. McRae, the undersigned being the husband and father of said Mollie A. McRae, hereby agree to endorse and procure the discounting of the note of said partnership for the sum of $5,000, and to renew and procure the renewal of the discount of said partnership note as in the aforegoing agreement mentioned.

Witness their hands and seals in duplicate this ——— day of January, in the year one thousand, nine hundred and three.

GEORGE McRAE, (Seal)
JOHN J. MAHON. (Seal)

The firm commenced business in January, 1903, but was unsuccessful, and on March 25th, 1908, receivers were appointed. The receivers took

charge, disposed of the property and collected the assets. On March 5th, 1908, an auditor's account was stated in which it appeared the assets amounted to $3.231.51. Various claims were filed amounting to $4,593.16. There was a dividend to creditors of about 44 per cent. On March 8th, 1909, (before the auditor's account was ratified), the claim of J. J. Mahon was filed, which is now in controversy.

Mr. Mahon claims that he endorsed the note as provided in the agreement, and several renewals thereof, and on the failure of the firm was called on to pay the note which he did, and he now claims he is entitled to share in the distribution of assets with the other creditors.

Exceptions were filed to the allowance of this claim.

It is contended for the exceptants, that by the true construction of the agreement of the partners to which it is claimed Mr. Mahon became a party to all intents and purposes when he signed the agreement added to the partnership agreement, the note was not the absolute obligation of the firm, but was payable out of profits only. Inasmuch as there were no profits, it is contended there could be no claim on the note.

The agreement will not bear that construction. The language of the agreement is: "The party of the second part (Mrs. McRae) agrees to procure a loan of the sum of $5,000, to be used as the capital of said partnership by causing and procuring the promissory note of said partnership for the sum of $5,000 to be discounted." * * * "The said promissory note and its renewals to be a partnership indebtednesss and liability." It is apparent that this loan was to be repaid by the firm.

The clause stipulating "note to be paid off out of the profits" was evidently inserted to prevent any withdrawal of the profits by the partners, except the weekly salaries, until the note was paid. It would be a very unfair and forced construction of the agreement to construe it to mean that the note was to be paid out of the profits or not at all.

Suppose one of the partners had died, or the firm had been dissolved for any reason, and there had been no profits, it certainly could not be held

there was no obligation to pay the note. The agreement refers to the $5.000 as "a loan." It was to be "a partnership indebtedness and liability."

The position of the claimant under this agreement was that of endorser on a note; he was not a partner. The holder of the note could, at its maturity, have refused to renew it and sued the firm and the endorsers. An endorser who was compelled to pay the note has a claim against the makers.

It is also contended for the exceptants that the agreement was not carried out; that the firm note, as stipulated in the contract, was never, in fact, given, but that the money was obtained from the bank by Mr. Mahon on the note of Mr. McRae, endorsed by Mr. Mahon, and that the money so obtained was then loaned by Mr. Mahon to the firm. If this is true he is none the less a creditor.

It is further contended that credit was extended to the firm by the exceptants in this case, relying upon statements made by the firm to the Mercantile Agencies as to the financial strength of the firm of Connolly & Company, and the capital invested.

It is contended that the firm stated to a commercial agency that they had a capital of $5,000, and that this was false. While the statement may be true in one sense as the firm did have the capital, it was deceptive; good faith required that the statement should have been added that the capital was borrowed.

But there is no evidence to connect Mr. Mahon with the statements the firm made. He made no statements to anybody; took no part in the affairs of the firm except to endorse the notes; he was not a partner and in no way bound by statements made by the members of the firm, nor does it appear he ever countenanced or ever knew of such statements.

His position is simply that of an endorser who has paid a note or of one who has loaned money. Merchandise creditors have no preference over those who lend money. I think the claim, if it is sustained on the facts, ought to be allowed a dividend out of the assets.

These proceedings have been somewhat irregular.

The claim should have been referred to the auditor for investigation and to

allow according to its legal right and priority.

It was contended at the hearing that the claim was not regularly proven. The auditor may take testimony in support of, or against the claim, except so far as the matter is concluded by this decision.